O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KATHRYN HAMILTON,                    )    NO. EDCV 08-1843-MAN
                                     )
               Plaintiff,            )
                                     )    MEMORANDUM OPINION
         v.                          )
                                     )    AND ORDER
MICHAEL J. ASTRUE, Commissioner      )
of Social Security,                  )
                                     )
               Defendant.            )
_____)

     Plaintiff filed a Complaint on December 24, 2008, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for supplemental security income ("SSI").   On
February 26, 2009, the parties consented to proceed before the
undersigned United States Magistrate Judge pursuant to 28 U.S.C. §
636(c).   The parties filed a Joint Stipulation on August 10, 2009, in
which:  plaintiff seeks an order reversing the Commissioner's decision
and awarding benefits or, in the alternative, remanding the matter for
further administrative proceedings; and defendant seeks an order
affirming the Commissioner's decision.   The Court has taken the parties'
Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On September 4, 2002, filed an application for SSI, in which she alleged to have been disabled since September 1, 1991, due to anxiety, memory loss, partial blindness, and lower back, pelvic, and left shoulder pain.[1] (A.R. 66-74.) Plaintiff's past relevant work experience includes the jobs of clothes tagger and prep cook. (A.R. 243, 290, 311-12.)

Plaintiff's application was denied initially and upon reconsideration (A.R. 47-58), and she requested a hearing (A.R. 59). On March 31, 2004, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge F. Keith Varni ("ALJ Varni"). (A.R. 40-46.) On April 30, 2004, ALJ Varni denied plaintiff's application. (A.R. 10-20.) Plaintiff appealed ALJ Varni's decision, and the Appeals Council denied plaintiff's request for review. (A.R. 3-8.) On September 13, 2004, plaintiff sought review in this Court (Case No. EDCV 04-1118-MAN). (A.R. 269.) On March 27, 2006, the Court reversed the decision and remanded the case for further proceedings. (A.R. 268-80.) On April 24, 2006, the Appeals Council vacated ALJ

---

[1]   Plaintiff had filed earlier applications in 1983, and 1989, which were denied, and she did not request a hearing and/or seek review of the denial of those applications. (Administrative Record ("A.R.") 13.) Plaintiff also filed an application on October 31, 2000, which an Administrative Law Judge denied on January 24, 2002; the Appeals Council denied review on April 22, 2002. (Id.)

While this Court's review of the denial of her instant SSI claim was pending, plaintiff filed another SSI application on September 21, 2005; the Appeals Council consolidated that claim with plaintiff's claim based on her September 4, 2002 application. This lawsuit stems from the Commissioner's final decision on the consolidated claims. (A.R. 237, 266.)

2

Varni's decision and remanded the case to an Administrative Law Judge. (A.R. 266-67.)

On July 3, 2008, Administrative Law Judge Phillip E. Moulaison ("ALJ") held a hearing, at which plaintiff and others testified. (A.R. 285-318.) On August 22, 2007, the ALJ issued a decision that was partially favorable in that the ALJ found plaintiff to be disabled and entitled to receive SSI as of December 27, 2007, but found she was not disabled prior to that date. (A.R. 237-44.)

### SUMMARY OF THE COMMISSIONER'S DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since September 1, 1991, the alleged onset date. (A.R. 239.) The ALJ determined that plaintiff has a combination of severe impairments consisting of: a history of chronic lower back, right hip, pelvic, and left shoulder pain; diabetes mellitus; peripheral neuropathy; hypertension; history of hepatitis; history of right eye injury; and obesity. (A.R. 239.) Relying on the December 10, 2002 report of Dr. Linda M. Smith, a psychiatrist who performed a consultative psychiatric evaluation of plaintiff, the ALJ concluded that plaintiff's mood disorder is non-severe. (*Id.*) The ALJ further determined that plaintiff's impairments, singly or in combination, do not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 240.)

1     The ALJ determined that, as of December 27, 2007,[2] plaintiff's
2  residual functional capacity ("RFC") was for unskilled sedentary work as
3  defined in 20 C.F.R. § 416.967(a), because she needed a cane to walk.
4  (A.R. 240.)  The ALJ concluded that, as of December 27, 2007, plaintiff
5  was unable to perform her past relevant work as a clothes tagger or a
6  prep cook (A.R. 243), and based on her age, education, work experience,
7  and RFC, there was not a significant number of jobs in the national
8  economy that she could perform (A.R. 244).  Accordingly, a finding of
9  "disabled," as of December 27, 2007, was warranted.  (*Id.*)

10

11     With respect to the pre-December 27, 2007 time frame, the ALJ
12  concluded that plaintiff had the RFC to perform unskilled light work
13  with certain limitations.  (A.R. 242.)  Specifically, the ALJ concluded
14  that plaintiff was able to engage in the following activities with the
15  indicated limitations:  sit for six hours in an eight-hour workday;
16  stand and/or walk for six hours in an eight-hour workday; lift and/or
17  carry and push and/or pull 10 pounds frequently and 20 pounds
18  occasionally; climb, balance, stoop, kneel, crouch, and crawl
19  occasionally; reach overhead with the left arm occasionally; and engage
20  in unlimited handling, fingering, and feeling.  (A.R. 240.)  The ALJ
21  found that, although plaintiff's color vision is unlimited, her right
22  eye vision was limited in near acuity, far acuity, depth perception,
23  accommodation, and field of vision.  (*Id.*)  He further found that
24  plaintiff had no communicative or environmental limitations.  (*Id.*)

25

26     The ALJ found that, prior to December 27, 2007, there was a

27  _____

28  [2]   On December 27, 2007, plaintiff's age category changed from younger
   individual to individual approaching advanced age.  (A.R. 243.)

4

significant number of jobs in the national economy that plaintiff could have performed.[3]   (A.R. 243-44.)   The ALJ relied on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids"), as the basis for concluding that, given plaintiff's age, education, work experience, and RFC for light work prior to December 27, 2007, a finding of "not disabled" was warranted for the period prior to December 27, 2007.  (A.R. 244.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

---

[3]   It is unclear whether the ALJ was referring to plaintiff's past relevant work or different jobs or both.  At Step Four, the ALJ made the express finding that plaintiff "is unable to perform any past relevant work"; however, his attendant Step Four discussion focused *only* on the relationship between the light RFC required for plaintiff's past relevant work and her sedentary RFC post-December 27, 2007.  (A.R. 243.) In his Step Five finding, the ALJ failed to identify *what* jobs in the national economy he had determined plaintiff could perform prior to December 27, 2007.  (A.R. 243-44.)

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of Health and Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995). "Where the evidence as a whole can support either a grant or a denial, [a federal court] may not substitute [its] judgment for the ALJ's." <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1222 (9th Cir. 2009)(citation and internal punctuation omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Tommasetti v. Astrue</u>, 553 F.3d 1035, 1038 (9th Cir. 2008); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005); *see also* <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004)("if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision"). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56

(9th Cir. 2006)); *see also* <u>Tommasetti</u>, 533 F.3d at 1038; <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following three issues:  (1) whether the ALJ properly considered the vocational expert's testimony; (2) whether the ALJ properly analyzed plaintiff's combination of impairments to determine whether her impairments meet or medically equal an impairment set forth in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. A, App. 1 (the "Listings"); and (3) whether the ALJ properly considered plaintiff's obesity.  (Joint Stipulation ("Joint Stip.") at 2-3.)

I.   <u>No Step Three Error Warranting Reversal Has Been Shown</u>.

A.   <u>The Listings</u>

At Step Three of the five-part sequential evaluation for determining whether a claimant is disabled, the Commissioner must determine whether a claimant's impairment or impairments meet or equal one of the specific impairments set forth in the Listings.  20 C.F.R. § 416.920(a)(4)(iii).  The physical and mental conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs."  <u>Lester v. Chater</u>, 81 F.3d 821, 828 (9th Cir. 1995).  The Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary."  <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532, 110 S. Ct. 865, 892 (1990); *see*

*also* <u>Lewis v. Apfel</u>, 236 F.3d 503, 512 (9th Cir. 2001).  If a claimant shows that her impairments meet or equal a Listing, she will be found presumptively disabled.  20 C.F.R. §§ 416.925-416.926.

For an impairment or combination of impairments to *meet* a Listing, all of the criteria of that Listing must be satisfied for the requisite durational period.  <u>Zebley</u>, 493 U.S. at 530, 110 S. Ct. at 891 (the impairment "must meet *all* of the specified medical criteria" in the Listing)(emphasis in original); *see also* 20 C.F.R. §§ 416.909 and 416.925(c)(3); Social Security Ruling ("SSR") 83-19 ("[a]n impairment 'meets' a listed condition in the Listing of Impairments only when it manifests the specific findings described in the set of medical criteria for that listed impairment").

For an impairment or combination of impairments to *equal* a Listing, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." <u>Zebley</u>, 493 U.S. at 531. 110 S. Ct. at 891 (emphasis in original); *see also* 20 C.F.R. § 416.926(a)-(b); SSR 83-19 (an impairment is "equivalent" to a Listing only if a claimant's symptoms, signs, and laboratory findings are "at least equivalent in severity" to the criteria for the listed impairment most like the claimant's impairment).  In making an equivalence assessment, the claimant's impairments "'must be considered in combination and must not be fragmentized in evaluating their effects.'" <u>Lester</u>, 81 F.3d at 829 (citation omitted).  A determination of medical equivalence must rest on objective medical evidence.  *See* <u>Lewis</u>, 236 F.3d at 614 ("[a] finding of equivalence must be based on medical evidence only"); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1100 (9th Cir. 1999)

("[a] generalized assertion of functional problems is not enough to establish disability at step three," because "'[m]edical equivalence must be based on medical findings'"; citation omitted); 20 C.F.R. § 416.929(d)(3) ("In considering whether your symptoms, signs, and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment, we will look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria. However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment.").

At Step Three, the claimant bears the burden of proving that her impairment or combination of impairments meets or equals the criteria of a Listing. Tackett, 180 F.3d at 1098-99. In addition, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch, 400 F.3d at 683; see also Lewis, 236 F.3d at 514 (finding that the ALJ's failure to discuss equivalence did not warrant reversal, because the claimant had not offered any theory, plausible or otherwise, that might show how the combined effect of his impairments equaled a Listing).

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." Lewis, 236 F.3d at 512. A "boilerplate finding [at Step Three] is insufficient to support a conclusion that a claimant's impairment" does

not meet or equal a listing. *Id.* In <u>Marcia v. Sullivan</u>, 900 F.2d 172, 176 (9th Cir. 1990), the Ninth Circuit held that: an ALJ must explain and evaluate the evidence that supports his Step Three finding; and an ALJ's unexplicated finding at Step Three -- *to wit*, "[t]he claimant has failed to provide evidence of medically determinable impairments that meet or equal the Listings" -- was reversible error, because the ALJ failed to explain adequately his evaluation of why certain medical evidence of record and/or the combined effects of the claimant's impairments did not equal the Listing in question. *Id.* However, in <u>Lewis</u>, the Ninth Circuit clarified that the lack of a formal analysis and findings at the Step Three level will not constitute reversible error when: the ALJ's subsequent discussion of the relevant medical evidence supports a conclusory Step Three finding; and with respect to equivalency, the claimant fails to proffer a theory or evidence showing that his combined impairments equal a Listing. 236 F.3d at 513-14.

B.   <u>The ALJ's Step Three Finding</u>

As plaintiff correctly notes, the ALJ, in his decision, did not "provide an analytical discussion at the step three sequential evaluation process that addressed the combined effect of Plaintiff's multiple impairments." (Joint Stip. at 8.) The ALJ simply concluded that no impairment or combination of impairments met or equaled a Listing, because "[t]he objective medical evidence does not support a conclusion that the claimant has had limitations of listing level severity." (A.R. 240.)

Plaintiff argues that the ALJ's Step Three finding was erroneous,

because her combined impairments meet or equal three Listings --
specifically, No. 1.02A, 2.02, and 14.09A.  She contends that the ALJ
failed to analyze properly the combined effect of her "osteoarthritis,
chronic left hip and leg pain, and visual limitation" with respect to
these three Listings.[4]  (Joint Stip. at 9-13.)

       1.   <u>Listing 1.02A</u>

    Plaintiff first argues that the medical evidence establishes that
she met or equaled Listing 1.02A, which governs the major dysfunction of
a joint due to any cause.  The Listing requires three findings -- a
gross anatomical deformity and chronic joint pain and stiffness, *with*
signs of limitation of motion or other abnormal motion of the affected
joint, *and* medical imaging showing narrowing, destruction, or ankylosis
of the affected joint -- *plus* a further finding of the involvement of a
major peripheral weight-bearing joint, resulting in the inability to
ambulate effectively, as defined in 1.00B2b.

    Plaintiff argues that her treating records are replete with
evidence that she has complained, on an ongoing basis, of chronic
shoulder, back, hip, knee, and lower extremity pain.  Plaintiff relies

---

[4]  Relying on a physician's "impression" that plaintiff may have
fibromyalgia (A.R. 183), plaintiff asserts that she has received a
"diagnosis" of fibromyalgia as a "medically determinable impairment,"
which the ALJ should have considered at Step Three as part of her
"collective" impairments.  (Joint Stip. at 13.)  In the proceedings
before the Commissioner, plaintiff did not claim to suffer from
fibromyalgia.  She did not include fibromyalgia among the ailments she
reported to the numerous consulting physicians who examined her.
Plaintiff has not cited any evidence indicating that any clinical
testing was performed and elicited positive findings that she has
fibromyalgia.  Accordingly, plaintiff's fibromyalgia argument is not
persuasive.

on 2002 and 2003 physician notes indicating that, based on plaintiff's complaints of hip and leg pain, she might have osteoarthritis. However, medical imaging performed in 2001, 2004, and 2005 was negative for osteoarthritis or bone or joint abnormalities in her knees or hips. (A.R. 134-35, 379, 384-86.) A 2004 diagnostic image of plaintiff's left shoulder did show moderate degenerative changes in her left shoulder (glenohumeral joint). (A.R. 387.) On July 14, 2008, a treating physician at Arrowhead Regional Medical Center ("ARMC") noted that plaintiff has left shoulder weakness and pain, with a decreased range of motion. (A.R. 468-69.)

Thus, there was some medical evidence of record supportive of the first three findings required for Listing 1.02A based on plaintiff's left shoulder impairment, but not as to her lower extremities. Plaintiff argues that the further required finding of Listing 1.02A -- involvement of a weight-bearing joint resulting in an inability to ambulate effectively as defined in 1.00B2B -- is met by evidence that: in February 2001, a nurse observed that plaintiff walks slowly using a cane and with a slight limp (A.R. 137); in February 2005, an ARMC physician noted that plaintiff complained of a burning sensation on the bottom of her feet, numbness, and an inability to ambulate as effectively for the past two weeks as she previously had been, and the physician further noted, without explanation, "diminished strength" in lower extremities and "unable to ambulate without cane"[5] (A.R. 375); and in December 2007, a consultative orthopedist (Dr. Conaty) observed that

---

[5]   It is unclear if this latter observation was a finding by the physician or was based on plaintiff's self-report. There is no evidence of any clinical testing and findings attendant to this observation. (A.R. 375.)

plaintiff's "[w]eight-bearing gait, walking on toes, and walking on
heels are done with difficulty" (A.R. 439).

Dr. Conaty, however, also found that there was no evidence of any
instability in plaintiff's joints, she had a normal range of motion and
muscle strength in her lower extremities, she did not use an ambulatory
device to walk, and she had the capacity to stand and walk for six hours
in an eight-hour day. (A.R. 438-40.) Another consultative physician
(Dr. Clements), who examined plaintiff in April 2006, also found that
there is no evidence of instability in plaintiff's knees, her range of
motion in her lower extremities was normal, and she could stand and walk
for six hours in an eight-hour day. (A.R. 432-34.) Dr. Clements noted
that plaintiff had difficulty standing on her heels and toes but stated
that "some of the difficulties with balance" are related to plaintiff's
visual deficit in her right eye. (A.R. 433.) Similarly, another
consultative physician (Dr. Lin), who examined plaintiff in November
2007, noted that plaintiff: denied using an assistive device on a
regular basis; did not need an assistive device to ambulate across the
room and had a gait within normal limits; had slight difficulty standing
on toes and heels and performing a tandem gait; and could stand or walk
for six hours in an eight-hour day. (A.R. 455.) In December 2002,
plaintiff told an examining physician (Dr. Klein) that she does not use
a cane, and he found no instability in her knees and that she had a
normal range of motion in her hips, knees, and ankles and a normal gait
with unaffected heel to toe walking. (A.R. 121, 124-25.)

Section 1.00B2B of the Listings states that an "inability to
ambulate effectively" means an "extreme limitation of the ability to

walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."   Ineffective ambulation is "defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities."   *See* Section 1.00B2B(1) (emphasis added).   This provision cites as "examples," *inter alia*, an "inability to walk without the use of a walker, two crutches or two canes" or an "inability to use standard public transportation" or an "inability to carry out routine ambulatory activities, such as shopping" or an "inability to climb a few steps at a reasonable pace with the use of a single hand rail."   *See* Section 1.00B2b(2).

Plaintiff did not proffer in the proceedings before the Commissioner (and does not do so now) objective medical evidence indicating, or tending to indicate, that any of her impairments establish an inability to ambulate effectively that is equal in severity to the requirements of 1.00B2B and 1.02A of the Listings.   The medical evidence of record does not contain any such finding.   Rather, plaintiff relies only on her self-reports of symptoms, conflicting evidence regarding her possible use of a single cane, and observations by medical personnel that plaintiff has some difficulty with balance and weight-bearing gait.   Her proffered evidence does not meet her burden at Step Three.

Plaintiff's self-reports of symptoms and functional limitations based on hip and joint pain cannot suffice to raise the severity of her related impairment to that of Listing 1.02A.   20 C.F.R. § 416.929(d)(3);

see also Lewis, 236 F.3d at 614; Tackett, 180 F.3d at 1100.  Moreover, even crediting the conflicting evidence regarding her intermittent use of a cane,[6] her use of a single cane does not limit the functioning of both of her upper extremities, and there is no evidence that plaintiff requires the use of two canes.  The testimony elicited at the hearing also does not support plaintiff's claim of Step Three error.  Plaintiff testified that:  when her feet "burn" and "swell up" periodically, she can "barely walk on them at times"; she can walk up a flight of stairs if her feet are not burning, but her feet are "always burning"; and she can walk half a block without having to rest.  (A.R. 290, 294.)  The ALJ, however, rendered an adverse credibility finding with respect to plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms.  (A.R. 242.)  Plaintiff does not challenge that credibility finding here.[7]  But even if she had, no objective medical evidence supports plaintiff's contention that a "burning" sensation prevents her from walking, and moreover, she conceded that she can walk up a flight of stairs when her feet are not "burning" -- a concession which militates against finding that plaintiff's claimed impairments prevent her from ambulating effectively within the meaning of Section 1.00B2b(2).  Moreover, plaintiff's daughter testified that plaintiff takes the bus by herself to go to doctor's appointments several times a month and goes shopping at the grocery store and mall with her daughter, although plaintiff will "walk

---

[6]   As noted above, plaintiff told two consultative examiners that she does not use a cane.

[7]   The Court notes that, on July 10, 2007, nerve conduction studies were conducted on plaintiff's lower extremities.  The finding was normal and "[n]o evidence of peripheral neuropathy or entrapment neuropathy [wa]s noted."  (A.R. 515.)

a little bit" at the mall and then sit on a bench, rather than walking "the whole mall." (A.R. 306, 309.) Plaintiff's ability to use public transportation without assistance and engage in shopping indicates that plaintiff does not have the requisite extreme limitation on ambulation contemplated by Section 1.00B2B(2), and thus, by Listing 1.02A.

While there is medical evidence indicating that plaintiff has some difficulty with her weight-bearing gait and her ability to stand on her heels and toes, and possibly some diminished strength in her lower extremities, there is no evidence that these symptoms have an extreme limitation on plaintiff's ability to walk and that she is unable to ambulate effectively, within the meaning of the relevant portions of the Listings.   Hence, plaintiff has not shown that there is any basis for finding that she meets or equals Listing 1.02A.

         2.   <u>Listing 14.09A1</u>

    Plaintiff asserts that she also meets or equals Listing 14.09A1 due to asserted "persistent inflammation" in her left shoulder, left hip, and knees. (Joint Stip. at 12.)  Listing 14.09A1 governs "inflammatory arthritis," as the condition is defined in Section 14.00D6.  As distinct from osteoarthritis, a mechanical disorder governed by Listing 1.02A, inflammatory arthritis includes a "vast array of disorders" that are immunological in nature.  Section 14.00D6(d) states that "the diagnosis of inflammatory arthritis is based on the clinical features and serologic findings described in the most recent edition of the Primer on the Rheumatic Diseases published by the Arthritis Foundation."

Listing 14.09A1 requires findings of an inflammatory arthritis disorder within the meaning of Section 14.00D6 (*i.e.*, the existence of an immune disorder) *with* persistent inflammation or persistent deformity of a major peripheral weight-bearing joint, which results in an inability to ambulate effectively within the meaning of Section 1.00B2b as described above. *See* Section 14.00C6 (stating that, for purposes of Listing 14,09A1, "inability to ambulate effectively" has the same meaning as that proscribed by Section 1.00B2B).

Although the record contains evidence of osteoarthritis in plaintiff's left shoulder, plaintiff cites no evidence of record that she has been diagnosed with inflammatory arthritis in either shoulder or her hips or knees or that any physician has suspected that she has such an immunological disease in any of these body parts. There is no medical evidence of record establishing that plaintiff, in fact, has "persistent inflammation" in these body parts -- the first requisite for application of Listing 14.09A1. Moreover, for the reasons set forth above, there is no basis for finding that the "inability to ambulate effectively" requirement for this Listing could be satisfied.

     3.  <u>Listing 2.02</u>

Plaintiff also contends that she meets or equals Listing 2.02. (Joint Stip. at 12-13.) Listing 2.02 relates to loss of visual acuity, and applies when a claimant's remaining vision in the better eye after best correction is 20/200 or less.

As plaintiff concedes, "documentation is scant in regards to

17

Plaintiff's best corrected vision in the better eye." (Joint Stip. at 13.)  A November 14, 2005 note by Dr. Blanchard indicates that he assessed plaintiff as having a visual acuity of 20/80; there is no indication whether that assessment was for corrected or uncorrected vision.  (A.R. 337.)  Dr. Clements performed a visual acuity test on April 17, 2006, and found that, "[w]ithout glasses, both eyes showed 20/50, right eye showed 20/70 and the left eye showed 20/70." (A.R. 431.)   On November 30, 2007, Dr. Lin, or someone at his office, performed a visual acuity test that showed a visual acuity of 20/100 in both eyes without glasses, with 10/100 in the right eye and 10/70 in the left eye.  (A.R. 457.) On December 4, 2007, Dr. Conaty, or someone at his office, performed a visual acuity test, which showed a visual acuity of 20/100 in both eyes without glasses, with <20/200 in the right eye and 20/70 in the left eye.[8]  (A.R. 442.)

Besides her own self-report of "some blurred vision" (A.R. 190), plaintiff points to no evidence of record bearing on her assertedly Listing-level visual impairment other than the above-described test results.  These results do not establish the finding required by Listing 2.02.  The record, thus, does not provide any basis for finding that plaintiff meets or equals Listing 2.02.

---

[8]   Plaintiff notes the reference in the test results to a visual acuity of <20/200 with pinhole correction, but fails to acknowledge that the test results stated that plaintiff claimed "can't see nothing" through the pin hole and her effort was "poor." (A.R. 442.)  In any event, pin hole testing is not an acceptable method of determining best-corrected visual acuity for purposes of Listing 2.02.  *See* Section 2.00A5b.

1                    4.   <u>No Reversible Error Exists</u>.

2

3        For the reasons set forth above, the evidence of record does not

4   support a finding that the plaintiff's physical impairments, whether on

5   their own or in combination, meet or equal Listings 1.02A, 2.02, and/or

6   14.09A.    Even though the ALJ's Step Three Finding was conclusory,

7   elsewhere in his decision, the ALJ discussed the objective medical

8   evidence bearing on plaintiff's claimed physical impairments.   (A.R.

9   241-43.)   Given plaintiff's failure to meet her burden of presenting

10  evidence establishing that her impairments or combination of impairments

11  meets or equals the criteria of a Listing (<u>Tackett</u>, 180 F.3d at 1098-

12  99), the Court concludes that the ALJ's discussion of the medical

13  evidence in his decision sufficed to adequately support his Step Three

14  finding that the objective medical evidence did not establish that

15  plaintiff's impairments meet or equal the severity of any Listing.  *See*

16  <u>Lewis</u>, 236 F.3d at 513; *see also* <u>Burch</u>, 400 F.3d at 683.   In addition,

17  as in <u>Lewis</u>, 236 F.3d at 514, given plaintiff's failure to set forth a

18  plausible theory of how the evidence shows that the combination of her

19  impairments equals any Listing, the ALJ's failure to explicitly analyze

20  the equivalence issue does not warrant reversal.

21

22  II.  <u>The ALJ's Consideration Of Plaintiff's Obesity Does Not Warrant</u>

23       <u>Reversal</u>.

24

25       The ALJ found, at Step Two, that plaintiff has a severe impairment

26

27

28

                                   19

of obesity.[9]  (A.R. 239.)  At the commencement of his Step Four analysis, the ALJ noted SSR 02-1p and stated that plaintiff's obesity "has been taken into consideration in arriving at" the RFC assessed.  (A.R. 240.) As plaintiff observes, other than the unexplained finding that plaintiff's obesity is a severe impairment, the ALJ's decision does not contain any further mention or analysis of plaintiff's obesity. Plaintiff complains that the ALJ failed to determine the effect of her obesity, in combination with her other impairments, at Step Three and that he failed to adequately assess the effect of her obesity at the remaining steps of the sequential evaluation.  (Joint Stip. at 18-19.)

Obesity was removed as a listed impairment from the Listings in 1999.  Nonetheless, as a general rule, when there is evidence of obesity, the Commissioner is required to determine the effects of the claimant's obesity at various points in the sequential evaluation.  SSR 02-01p.

For example, in Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003), the claimant was illiterate and pro se, and the evidence established that she had the impairments of diabetes and hypertension.  In addition,

---

[9]     The record shows that plaintiff is 5'5" and has weighed, at various times, 168, 174, 177, or 180 pounds.  (*See* A.R. 289, 301, 431, 438, 452.)

The Court notes that, at the hearing, plaintiff testified that she weighs 174 pounds, and this has been her normal weight, without much variance, for the past six years.  (A.R. 289, 301.)  A weight of 174 for a person of her height constitutes a Body Mass Index (BMI) of 29.0, which falls within the Overweight, rather than Obese, category.  *See, e.g.,* BMI calculator and information provided by the National Institute of Health at www.nhlbisupport.com/bmi/.  Even at 180 pounds, plaintiff's BMI would be 30.00, the very bottom range of Level I of the Obese category.  *See* SSR 02-01p.

although she had not alleged that she was disabled based on obesity, there was evidence that she was 4'9" (if not shorter) and her weight fluctuated between 205 and 213 pounds. *Id.* at 1179. The Ninth Circuit held that the administrative law judge erred in failing to consider the effect of claimant's obesity on her diabetes and hypertension for three reasons. First, the Ninth Circuit concluded that obesity had been raised as a disability "implicitly in [the claimant's] report of symptoms." *Id.* at 1182. Second, the Ninth Circuit concluded that the claimant's level of obesity was significant, was close to the former Listing criterion for a disabling impairment, and was a condition that could have exacerbated her diabetes and hypertension.[10] *Id.* Third, the Ninth Circuit concluded that, in view of the claimant's pro se status and the evidence of her obesity, the ALJ should have developed the record regarding her obesity. *Id.* at 1182-83.

Plaintiff cites <u>Celaya</u> for the proposition that an ALJ always "must determine the effect of the claimant's obesity upon his other impairments, his ability to work, and his general health." (Joint Stip. at 17-18.) Plaintiff, however, overlooks the Ninth Circuit's subsequent decision in <u>Burch</u>, *supra*, which clarified that <u>Celaya</u> does not establish an absolute mandate that, in every case, an administrative law judge specifically consider the interactive effects that obesity has on a claimant's other impairments throughout the five-step sequential disability analysis.

---

[10]   <u>Celaya</u> was a 2-1 decision. The majority calculated the claimant's BMI as being at least 44, which it described as being "extremely obese" within the meaning of the categories used by the Social Security Administration. 332 F.3d at 1179 (*citing* SSR 00-3p).

In <u>Burch</u>, the claimant, who was represented by counsel, alleged that she was disabled based on breast cancer, asthma, back pain, weakness, and depression. The medical evidence contained a notation that she was "'slightly obese'" and had gained 25 pounds in the past year, and one physician recommended that she join a medically-supervised weight loss program. 400 F.3d at 678. At the hearing, the claimant testified that she was 5'4" and weighed 215 pounds, but stated her "'normal'" weight was 185. *Id.* The administrative law judge did not find the claimant's obesity to be a severe impairment. *Id.* at 682. On appeal, relying on <u>Celaya</u>, the claimant argued that the administrative law judge had erred in failing to consider her obesity throughout the sequential disability analysis, including its interactive effects with respect to her other impairments. *Id.* at 681-82.

The Ninth Circuit, in <u>Burch</u>, distinguished <u>Celaya</u> on two bases. First, the record did not demonstrate that, with the possible exception of her back pain, the claimant's obesity exacerbated her other impairments. 400 F.3d at 682. Second, and "[m]ore significantly," the claimant was represented by counsel. *Id.* The Ninth Circuit then addressed whether, assuming the administrative law judge erred at Step Two in failing to find the claimant's obesity to be a severe impairment, there was any error at the remaining steps of the sequential evaluation. The Ninth Circuit noted that, under SSR 02-01p, an administrative law judge is precluded from making assumptions about the severity or functional effects of obesity combined with other impairments, and each case must be evaluated on the information in the case record. *Id.* at 682-83. The Ninth Circuit further noted that there was no evidence that the claimant's obesity limited her functioning, as there were no

treatment notes or diagnoses that addressed any limitations due to her obesity, and the medical record was "silent" regarding whether and how her obesity exacerbated her other impairments.   In addition, the claimant did not present evidence or testify that her obesity impaired her ability to work.   *Id.* at 683.   Given the claimant's failure to proffer evidence of functional limitations due to obesity, the Ninth Circuit concluded that the administrative law judge did not commit reversible error at Step Three in failing to consider the claimant's obesity.   The Ninth Circuit further found that the administrative law judge thereafter adequately considered the claimant's obesity in addressing her RFC and vocational ability, because he:   acknowledged the above-noted doctor notes; recognized that her obesity likely contributed to her back discomfort; and after weighing the evidence, assessed her with an RFC to perform a somewhat limited range of light work.   *Id.* at 683-84.

As in <u>Burch</u>, although the physicians who examined plaintiff noted her weight, plaintiff cites no evidence that any physician or other medical provider indicated that her obesity exacerbated her impairments or resulted in any functional limitation.   Also as in <u>Burch</u>, plaintiff did not claim to be disabled based on obesity when she applied for benefits and, although represented by counsel when she testified before the ALJ, did not raise her obesity in her testimony, whether as an impairment or a source of functional limitations.   (*See* A.R. 66, 74, 107, 113, 288-303.)   Further, as in <u>Burch</u>, plaintiff has not presented any evidence that her obesity limited her functioning, exacerbated her other impairments, or was otherwise disabling.   Indeed, the consultative physicians who examined plaintiff in April 2006, and November 2007, were

23

cognizant of her height and weight, as well as her other claimed impairments, and nonetheless concluded that she retained the functional capacity to perform work at a light exertional level with limitations. (A.R. 429, 431, 434, 450-52, 455.)   Moreover, as in <u>Burch</u>, the ALJ expressly stated that he did take plaintiff's obesity into consideration when he assessed her RFC consistently with the foregoing consultative physician opinions.   (A.R. 240.)

This case differs in one material, and critical, respect from <u>Burch</u>.   Unlike in that case, the ALJ here *did* find that plaintiff's obesity constituted a severe impairment at Step Three.   Thus, unlike in <u>Burch</u>, it is not clear that the ALJ actually failed to consider plaintiff's obesity, in combined effect with her other impairments, in making his Step Three finding.   Even if, *arguendo*, he failed to do so, however, given plaintiff's failure to present evidence regarding the effect of her obesity when combined with her other impairments, the Court would not find reversible error at Step Three, based on the rationale set forth in <u>Burch</u>.   As in that decision, plaintiff simply has not offered any evidence, or plausible theory, showing that her obesity, alone or in combination with her other impairments, met or equaled any Listing.   *See* <u>Burch</u>, 400 F.3d at 683 (an ALJ is not required to discuss the combined effects of an impairment unless the claimant presents evidence to establish equivalence).   There also is no basis for finding reversible error in the ALJ's consideration of the subsequent Steps.   As in <u>Burch</u>, there was no evidence presented to the ALJ of any functional limitations due to plaintiff's obesity that detract from the ALJ's RFC assessment and/or that he failed to consider.

24

Accordingly, the Court concludes that there was no reversible error committed by the ALJ in connection with his consideration of plaintiff's obesity.

III. <u>The ALJ Erred At Step Five</u>.

As noted earlier, the ALJ adopted the RFC assessment of Dr. Clements, namely, for light work with additional limitations, with respect to plaintiff's RFC prior to December 27, 2007. (A.R. 242.) At the hearing, the ALJ asked the testifying vocational expert ("VE") whether, assuming the RFC assessed by Dr. Clements, plaintiff could perform her past relevant work; the VE testified that plaintiff could do so, along with a wide range of other light, unskilled work in the areas of assembly, inspection, and sorting. (A.R. 315-16.) Upon further questioning, the VE *sua sponte* noted that the medical records indicated plaintiff "may require a cane to ambulate for prolonged periods of time," and the VE opined that this would preclude plaintiff's past work as a prep cook. (A.R. 316-17.) The VE clarified that, with the cane usage, plaintiff's RFC would remain set at light, unskilled work, and her past relevant work as a clothes tagger, as well as some assembly, bench work, and sorting jobs, would not be precluded, but there would be some erosion as to jobs that require prolonged standing. (A.R. 317.)

Im his decision, the ALJ found that, prior to December 27, 2007, there were a significant number of jobs in the national economy that plaintiff could have performed, although he did not identify any such jobs. (A.R. 243.) In his supporting discussion for this Step Five finding, the ALJ did not mention the VE's testimony and focused only on

25

application of the Grids.  (A.R. 243-44.)  After a general discussion of how the Grids are used when a claimant has only exertional limitations, only non-exertional limitations, or a combination thereof, the ALJ concluded that, prior to December 27, 2007, "based on a residual functional capacity for light work, considering [plaintiff's] age, education, and work experience, a finding of 'not disabled' is reached by direct application of Medical-Vocational Rule 202.17."  (A.R. 244.)

At Step Five of the sequential evaluation, the burden shifts from the claimant to the ALJ to show that the claimant is able to perform other work that exists in the national economy.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).  The ALJ can meet this burden by either taking the testimony of a vocational expert or by referring to the Grids.  Id.; see also Tackett, 180 F.3d at 1101 (describing how VE testimony and the Grids are used at Step Five).  The Grids are tables that are used "for determining the availability and number of suitable jobs for a claimant."  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  The Grids categorize jobs by their physical-exertional requirements.[11]  Id.

Reliance on the Grids alone to meet the Commissioner's burden at Step Five is proper only when they completely and accurately represent a claimant's limitations.  Bruton v. Massanari, 268 F.3d 824, 827 (9th

---

[11]  Exertional limitations are strength related limitations, such as limitations on sitting, standing, walking, lifting, carrying, pushing, and pulling.  Non-exertional limitations are non-strength related limitations, such as pain and mental, sensory, postural, manipulative, visual, and environmental limitations.  See, e.g., Tackett, 180 F.3d at 1102; Cooper v. Sullivan, 880 F.2d 1152, 1156 n.6-n.7 (9th Cir. 1989); Desrosiers, 846 F.2d at 577 (Pregerson, J., concurring); 20 C.F.R. § 416.967.

Cir. 2001); Tackett, 180 F.3d at 1101.  "'In other words, a claimant must be able to perform the full range of jobs in a given category' in order for the Commissioner to appropriately rely on the grids." Bruton, 268 F.3d at 827-28 (quoting Tackett).   When a claimant has both exertional and non-exertional limitations and the non-exertional limitations significantly limit the range of work he can perform, mechanical application of the Grids is inappropriate.  Tackett, 180 F.3d at 1102, 1104.  The ALJ must first determine whether the exertional limitations alone warrant a finding of disability under the Grids; if not, further evidence must be adduced, namely, the testimony of a VE. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000); Cooper, 880 F.2d at 1155.

    At the hearing, the ALJ elicited the above-described testimony by the VE.  However, as plaintiff observes, the ALJ failed to direct the VE to consider all of plaintiff's impairments.  The ALJ simply asked the VE to look at the paragraphs in the opinions of Drs. Clements and Lin setting forth their specific RFC assessments; he did not ask the VE to consider what effect plaintiff's severe impairments of chronic pain and right eye injury might have on plaintiff's ability to perform her past relevant work or any other jobs in the national economy.[12]

    In posing a hypothetical to a vocational expert, the ALJ must accurately reflect all of the claimant's limitations.  Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).  "The ALJ's depiction of the

_____

[12]   The ALJ also did not ask the VE to consider what effect plaintiff's use of a cane would have, but the VE nevertheless raised that issue and discussed the effect of the cane, as mentioned above.

claimant's disability [to the VE] must be accurate, detailed, and supported by the medical record." <u>Tackett</u>, 180 F.3d at 1101. The ALJ, however, is not required to include all limitations asserted by the claimant. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 756 (9th Cir. 1989). Instead, it is proper for the ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record. <u>Osenbrock</u>, 240 F.3d at 1163-64.

The ALJ specifically found that plaintiff has the severe impairments of a history of chronic lower back, right hip, pelvic, and left shoulder pain, and a history of right eye injury. (A.R. 239.) The ALJ further found that plaintiff had numerous non-exertional limitations, including postural and visual limitations. (A.R. 240.) Presumably, he would not have found those impairments and non-exertional limitations to exist unless he believed they were supported by substantial evidence.[13] Accordingly, he was obligated to include them in the hypotheticals posed to the VE, yet he failed to do so. The record here shows that, while the ALJ paid lip service to the requirement that he elicit VE testimony in view of plaintiff's non-exertional limitations, he failed to fulfill that requirement meaningfully.

The ALJ's error with respect to the VE testimony elicited is

---

[13]   The Commissioner's attempt to brush the ALJ's findings in this respect aside by the comment that the ALJ's adverse credibility finding is not challenged (Joint Stip. at 7) is not persuasive. While the ALJ may have found that plaintiff's statements regarding the "intensity, persistence, and limiting effects of" her symptoms to be not credible (A.R. 242), this adverse finding is distinct from, and does not negate, his extant findings that plaintiff has the severe impairments found at Step Two and is subject to a host of non-exertional limitations.

compounded by his apparent disregard of the VE's testimony entirely when he rendered his decision.  Although, at the outset of his decision, the ALJ acknowledged that the VE had testified, the ALJ made no further mention of that testimony, and at Step Five, he relied solely on a "direct application of" the Grids to find that plaintiff could perform a substantial number of unidentified jobs in the national economy prior to December 27, 2007.  Given the significant non-exertional limitations found by the ALJ, the ALJ's reliance solely on the Grids was improper. Moreover, given the VE's testimony that plaintiff's use of a cane would erode the jobs available in the light, unskilled category, the ALJ's sole reliance on the Grids was improper, because use of the Grids is appropriate only when the claimant is able to perform the full range of work in a given category.  <u>Tackett</u>, 180 F.3d at 1101.

The ALJ's failure to properly adduce and consider vocational expert testimony, and his reliance solely on the Grids, at Step Five constitutes error.  The Court does not find this error to be harmless, because even though the VE testified that plaintiff can perform one of her prior jobs with the use of a cane and can perform a wide range of light, unskilled work, the VE was not asked whether plaintiff can perform such jobs in the light of her other impairments and limitations. As a result of this error, the Commissioner failed to meet his burden at Step Five.  Accordingly, reversal is required.

IV.   <u>Remand For Limited Further Proceedings Is Appropriate</u>.

For the reasons noted above, the Commissioner's decision is affirmed with respect to the second and third issues raised by

plaintiff, but is reversed with respect to the first issue raised by plaintiff.  The question, thus, is whether to reverse and remand for further proceedings, or reverse and remand for an award of benefits.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.* at 1179-81.

Here, a critical issue remains, namely, whether plaintiff could have performed any work prior to December 27, 2007, if her impairments and non-exertional limitations are properly considered as a part of that determination.  On the record before the Court, it is not clear that the ALJ would be required to find plaintiff disabled prior to that date, even if the appropriate Step Five inquiry had been made.  Accordingly, this case must be remanded to the Commissioner *solely* for the purpose of resolving this issue.  On remand, the Commissioner must adduce the necessary vocational expert testimony and consider it properly in making the Step Five determination.  In addition, should the Commissioner again conclude that there was a significant number of jobs in the national

economy that plaintiff could have performed prior to December 27, 2007, the Commissioner must identify such jobs; a vague allusion to unidentified "jobs," as was made by the ALJ, will not suffice to meet the Commissioner's burden.

**CONCLUSION**

Accordingly, for the reasons stated above, the Commissioner's decision is REVERSED, and this case is remanded to the Commissioner for the further proceedings specified above.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  September 22, 2010

_Margaret a. Nagle_
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

31